UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

CASE NO. 17-10045-CIV-JLK

MARCLYNE LAGINE,

    Plaintiff,

v.

KEY WEST REACH OWNER, LLC,
a Foreign Limited Liability Company,
and DIN HOTI,

    Defendants.

_____/

## ORDER GRANTING DEFENDANT KEY WEST REACH OWNER, LLC'S MOTION TO DISMISS COUNTS I-IV OF PLAINTIFF'S AMENDED COMPLAINT

**THIS CAUSE** comes before the Court upon Defendant Key West Reach Owner, LLC's ("Key West Reach") Motion to Dismiss (DE 4), filed on May 10, 2017. The Key West Reach argues that counts I-IV—all the counts against it—should be dismissed.[1] Specifically, the Defendant argues immunity from Florida's Workers' Compensation law bars Plaintiff Marclyne Lagine's ("Plaintiff") negligence claims in counts I, II, and III, and the Plaintiff failed to plead sufficient facts to support the claim of intentional infliction of emotional distress in count IV.

---

[1] In the Amended Complaint (DE 1-2), the Plaintiff also asserts four separate counts against Defendant Din Hoti: battery (Count V); assault (Count VI); false imprisonment (Count VII); and intentional infliction of emotional distress (Count VIII). Defendant Hoti has neither answered, moved to dismiss, or otherwise responded to these counts, and accordingly, this Order addresses Defendant Key West Reach's Motion to Dismiss Counts I-IV only. Unless otherwise indicated, all references to "Defendant" in this Order pertain only to Defendant Key West Reach.

1

The Court has considered Plaintiff's Response (DE 12), filed on June 19, 2017, as well as Defendant's Reply thereto (DE 18), filed on July 7, 2017. After careful review, the Court grants Defendant Key West Reach's Motion to Dismiss Counts I, II, III, and IV of the Amended Complaint.

## BACKGROUND

This case arises from two alleged assaults of the Plaintiff by a guest at Key West Reach's hotel. (DE 1-2, ¶¶ 11, 15). According to the Amended Complaint, Defendant Din Hoti ("Hoti") first assaulted the Plaintiff, Marclyne Lagine, on February 10, 2013, while she worked at the gift shop in the Key West Reach's hotel. (DE 1-2, ¶ 11). After the first incident, Hoti allegedly told the Plaintiff "he would come back later to speak with her." (DE 1-2, ¶ 12). The Plaintiff alleges she "informed hotel management and/or staff of the assault and guest's intent to return," and was told to "return to the gift shop." (DE 1-2, ¶¶ 13-14). In addition, the hotel staff sent her back to work without calling the police or properly ensuring for her safety. (DE 1-2, ¶ 14). Later that same day, Hoti allegedly returned to gift shop and assaulted the Plaintiff again (DE 1-2, ¶ 15).[2]

---

[2] Plaintiff alleges separate counts against Defendant Hoti. In the battery claim (Count V), Plaintiff alleges Hoti's conduct included "grabbing, touching, kissing, rubbing up against and groping the Plaintiff." (DE 1-2, ¶ 58). In the assault claim (Count VI), Plaintiff alleges Hoti "intentionally threatened immediate harmful contacts." (DE 1-2, ¶ 58). In the false imprisonment claim (Count VII), Hoti allegedly "use[d] his hands, arms and other body parts for the purpose of and with the knowledge that his actions would result in Plaintiff being confined and restrained." (DE 1-2, ¶ 63). However, based on the allegations, it remains unclear when these particular actions occurred, whether in the first interaction, the second, or both. Defendant Key West Reach is not charged in these counts.

2

The Plaintiff claims the second assault occurred as a result of the Key West Reach's negligent hiring (Count I), supervision (Count II), and training (Count III). Specifically, Plaintiff alleges that after learning of the first assault, the hotel managers and security staff unreasonably "instructed her to return to work, without ensuring her safety." (DE 1-2, ¶¶ 22-23, 32-33, 42-43). In addition to the negligence claims, the Plaintiff brings a claim of intentional infliction of emotional distress (Count IV) against the Key West Reach, alleging the Defendant "fail[ed] to protect Plaintiff" and "allow[ed]" the second assault to occur after the Plaintiff "asked for help." (DE 1-2, ¶¶ 49-50). Plaintiff further alleges the Key West Reach "intentionally caused or acted with reckless disregard," which caused Plaintiff "severe mental anguish and suffering." (DE 1-2, ¶ 49).

## STANDARD OF REVIEW

Defendant's Motion to Dismiss argues that the Amended Complaint fails federal pleading standards and should be dismissed, under Rule 12 of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12. Rule 8 requires that a complaint include a "short and plain statement" demonstrating that the claimant is entitled to relief. Fed R. Civ. P. 8. To survive a Rule 12(b)(6) motion, a complaint must include "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). As a corollary, allegations absent supporting facts are not entitled to this presumption of veracity. *Id.* at 681.

When evaluating a motion to dismiss, the Court must take all of the well-pled factual allegations as true. *Id.* at 664. However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 663. And, the Court's duty to accept the factual allegations in the complaint as true does not require it to ignore specific factual details "in favor of general or conclusory allegations." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). The Court must dismiss a complaint that does not present a plausible claim demonstrating entitlement to relief.

## ANALYSIS

### 1. Negligent Hiring (Count I), Negligent Supervision (Count II), and Negligent Training (Count III)

Defendant moves to dismiss Counts I-III, arguing that Florida's Workers' Compensation Statute bars the Plaintiff's negligence claims against Key West Reach, or alternatively, that the Plaintiff failed to plead sufficient facts to support these claims. (DE 4 at 1-2). Under Florida's Workers' Compensation Statute, an "employer must pay compensation" to employees who "suffer[] an accidental compensable injury . . . arising out of work performed in the course and the scope

4

of employment." Fla. Stat. § 440.09(1). Liability under Florida's Workers' Compensation Statute is "exclusive and in place of all other liability, including vicarious liability, of such employer to any third-party tortfeasor and to the employee." Fla. Stat. § 440.11(1).

The Plaintiff contends that Florida's Workers' Compensation Statute does not provide the Defendant with immunity from the negligence claims because the Defendant's actions fall under Florida Statute § 440.11(1)(b)(2), an exception to workers' compensation's exclusive liability. (DE 12 at 2). The Defendant, in reply, argues that the exception cannot apply to workers' compensation immunity because, based on the allegations in the Amended Complaint, the Plaintiff fails to show that the conditions for the exception are met. (DE 18). The Court agrees.

The exception to workers' compensation immunity exists "[w]hen an employer commits an intentional tort that causes injury" to the employee. Fla. Stat. § 440.11(1)(b). The employee must demonstrate that an employer's actions meet the exception, showing (1) "[t]he employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee[;]" and (2) "the employee was not aware of the risk because the danger was not apparent[;]" and (3) "the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed

5

judgment about whether to perform the work." Fla. Stat. § 440.11(1)(b)(2). "All three elements must be proved by clear and convincing evidence to overcome statutory immunity of the employer." *Gorham v. Zachary Industrial, Inc.*, 105 So. 3d 629, 633 (Fla. 4th DCA 2013). Unless the elements are met, "the statute has eliminated the employee's common law right to bring a negligence action against the employer." *List Industries, Inc. v. Dalien*, 107 So. 3d 470, 473 (Fla. 4th DCA 2013).

Here, the Plaintiff fails to sufficiently allege facts that meet the exception of workers' compensation immunity. First, the Plaintiff does not allege that the "employer knew, based on similar accidents or on explicit warning" that injury was "virtually certain." Fla. Stat. § 440.11(1)(b)(2). Plaintiff argues that injury was "virtually certain" because she advised the manager "1) she had been assaulted and 2) the perpetrator intended to return," yet the employer took no action to prevent the "virtually certain" injury. (D.E. 12 at 3). Plaintiff relies on a Florida Supreme Court case, *Turner v. PCR, Inc.*, 754 So. 2d 683, 687 (Fla. 2000), which applied a standard of "substantially certain to result in injury," a lower standard than the "virtually certain" standard now in effect. However, the Florida Legislature "effectively overruled" *Turner* when it changed the "substantial certainty" standard to "an extremely different and a manifestly more difficult standard to meet," the "virtually certain" standard. *List Industries, Inc.*, 107 So. 3d at 471. The "virtually

6

certain" standard requires "a plaintiff must show that a given danger will result in an accident every – or almost every – time." *Id.* The "Legislature adopted an extremely strict exception which, we suspect, few employees can meet." *Gorham*, 105 So. 3d at 634.

Taking the Plaintiff's allegations as true, they meet neither the "virtually certain" standard, nor the former and lower "substantial certainty" standard of *Turner*. In *Turner*, one employee suffered injuries and another died in an explosion at the "PCR chemical plant." *Turner*, 754 So. 2d at 684. The employees had argued "PCR knew of a high risk of injury or death," *id.* at 685, by pointing to "at least three other uncontrolled explosions at PCR in just under two years." *Id.* at 690. The Court reversed a finding of summary judgment against the employees because there was a genuine issue of fact over whether the employer "engaged in conduct that was substantially certain to result in injury." *Id.* at 691.

But human actions, such as Defendant Hoti's alleged actions against the Plaintiff, are less predictable than the circumstances in *Turner*, which were bound to result in injury as employees performed chemical reactions, known to be dangerous and in an unsafe manner. Unlike *Turner*, the possibility of future injury in the instant case was less certain because it dealt with a human threat, more akin to *Holderbaum v. Itco Holding Co., Inc.*, 753 So. 2d 699, 700 (Fla. 3d DCA 2000). In *Holderbaum*, a supervisor fired an employee, who responded by threating the

7

supervisor's life "in the presence of other supervisory employees." *Id.* at 699. The employee carried out the threat later in the day, shooting the threatened supervisor. The court, applying the "substantially certain" standard from *Turner* to determine whether workers' compensation immunity applies, found that the employer's "mistakes in failing to remove him or his weapon from premises" did not create a situation "substantially certain to result in injury or death." *Id.* at 700. (internal quotations omitted).

Similar to *Holderbaum*, the Plaintiff's allegations involve an employer not intervening when there is a possibility of injury from another human. Plaintiff alleges Defendant Hoti assaulted her, and then claimed "he would come back later to speak with her." She informed "hotel management" about Hoti's assault and his "intent to return." (DE 1-2, ¶13). The possible threat is different in *Turner* because it dealt with mixing dangerous compounds in an unsafe manner, which caused explosions in the past – it was only a matter of time before another injury occurred due to the nature of the compounds involved and the unsafe procedure. But it is difficult to determine with future human action whether injury is a "substantial certainty," or even "virtually certain," to occur because people change their minds frequently for any number of reasons. After assaulting the Plaintiff, Defendant Hoti's words, "he would return later to speak with her," could be interpreted as a threat of future injury, similar to the more direct threat on the supervisor's life in

8

*Holderbaum*. But, like *Holderbaum*, Hoti's words do not create "substantial certainty" of future injury. Based on the facts alleged, the Plaintiff has not pled facts that meet the former "substantial certainty" standard under *Turner* or the "virtually certain" standard, as codified in § 440.11.

Plaintiff has not alleged facts that meet her burden when denying Defendant's right to the workers' compensation immunity defense, because the Complaint alleges that she was aware of the risk and danger and it was apparent to her. She had already suffered an initial assault from the Defendant Hoti and was aware firsthand of the danger Hoti posed to her if he returned again.

Finally, the third element of the applicability of the exception to workers' compensation has not been established since the Amended Complaint does not allege, nor can it be construed to allege, that the Key West Reach "deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work." Fla. Stat. § 440.11(1)(b)(2). (DE 1-2, ¶ 22)

The Plaintiff cannot satisfy the three elements for the exception to workers' compensation immunity, the Court finds Defendant Key West Reach is entitled to workers' compensation immunity and dismisses the Plaintiff's negligence claims against Key West Reach in Counts I-III.

### 2. Intentional Infliction of Emotional Distress (Count IV)

As to Count IV, which seeks recovery for a claim for intentional infliction of emotional distress, Defendant Key West Reach moves to dismiss for failure to plead sufficient facts and meet the level of "outrageousness" necessary to withstand a motion to dismiss. (DE 4 at 2). The Court agrees.

Florida law provides that four elements must be pleaded and supported by factual allegations to support a claim for intentional infliction of emotional distress:

> (1) The wrongdoer's [the hotel, in Count IV] conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;
> (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;
> (3) the conduct caused emotion[al] distress; and
> (4) the emotional distress was severe.

*Gallogly v. Rodriguez*, 970 So. 2d 470, 471 (Fla. Dist. Ct. App. 2007) (internal citation omitted).

Plaintiff's allegations against the hotel, taken as true, fail to meet the second element necessary to maintain a claim for intentional infliction of emotional distress. "The standard for outrageous conduct is particularly high in Florida." *Patterson v. Downtown Med. & Diagnostic Ctr., Inc.*, 866 F. Supp. 1379, 1383 (M.D. Fla. 1994) (internal quotations omitted). "It is not enough that the intent is tortious or criminal; it is not enough that the defendant intended to inflict emotional distress; and it is not enough if the conduct was characterized by malice

or aggravation which would entitle the plaintiff to punitive damages for another tort." *Clemente v. Horne*, 707 So. 2d 865, 867 (Fla. 3d DCA 1998) (internal citations omitted). Further, "[c]ourts in Florida and in the Eleventh Circuit have been extremely reluctant to recognize outrageous conduct in the employment context." *Blount v. Sterling Healthcare Group*, 934 F. Supp. 1365, 1366, 1371 (S.D. Fla. 1996) (dismissing plaintiff-employee's intentional infliction of emotional distress claim against company and its president for not reaching a "level . . . sufficiently outrageous," where the president of a company physically and verbally harassed plaintiff, including tightly hugging the Plaintiff, and in "one occasion refused to let go," along with "several instances where he rubbed her breasts with his arm, and one instance where he massaged the back of her head.") (internal citations omitted); *see also Ball v. Heilig-Meyers Furniture Co.*, 35 F. Supp. 2d 1371, 1376 (M.D. Fla. 1999) (dismissing intentional infliction of emotional distress claim, finding plaintiff's allegations that "Defendant's store manager rubbed his penis across Plaintiff's posterior" and he "rubbed his hand across Plaintiff's posterior and squeezed Plaintiff's posterior, commenting that he 'would like to get a piece of that,'" failed to "reach the necessary level of 'outrageousness' to survive the Motion to Dismiss.")

Plaintiff's Amended Complaint alleges no facts that would demonstrate any of Key West Reach's actions rise to the high level of outrageousness necessary for

11

a claim of intentional infliction of emotional distress. Neither the Defendant Key West Reach, nor any of its employees engaged in any conduct like the mistreatment alleged in *Ball* and *Blount*. And, unlike the employers in *Ball* and *Blount*, the Key West Reach is further removed from the mistreatment the Plaintiff suffered because Defendant Hoti was a <u>hotel guest</u>, not an employee. At most, Key West Reach's involvement in the harm the Plaintiff allegedly suffered was indirect due to inaction and failure to exercise greater vigilance or take protective measures.

As such, Plaintiffs' allegations fall far short of satisfying the second element of outrageousness, and Count IV will be dismissed.

## CONCLUSION

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** that Defendant's Motion to Dismiss the Amended Complaint **(DE 4)** be, and the same is, hereby **GRANTED WITH PREJUDICE.**

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida this 4th day of August, 2017.

/s/ James Lawrence King
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Cc: **All Counsel of Record**